ASA Dow, and JOSEPH L. HURD, impleaded with Duncan Stewart *et al.*, Appellants, *v.* BEZABEL W. PHILLIPS *et al.*, Appellees.

### APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

In commercial partnerships, where the profit and loss is to be shared, the law implies authority in the several partners to bind the whole, by executing notes, etc., in the firm name, if in the usual course of its business.

THIS suit was commenced against Asa Dow and Joseph L. Hurd, the plaintiffs in error, who were served, and Alfred A. Arrick and George W. Anderson, who entered their appearance voluntarily, and were defaulted. Duncan Stewart was not served.

Defendants Dow and Hurd plead, and issue was joined upon the pleas.

Suit was commenced by the plaintiffs, partners, under the name, firm and style of B. W. Phillips, who complained of all the defendants, partners in business and trade, etc., of a plea of trespass on the case upon promises : For that the said defendants, on, etc., at Mendota, etc., by the name, style and description of Arrick & Anderson, and as partners as aforesaid, made their certain bill of exchange in writing of that date, whereby they requested certain persons, by and under the name, style and firm of Dow, Hurd & Co., at sight to pay to the order of one G. M. Price, the sum of five hundred dollars, for value received, and that the same was then and there delivered to said Price, who then and there indorsed and delivered the same to said plaintiffs. It avers due presentation to said Dow, Hurd & Co., at Chicago, and their refusal to accept or pay the same, or any part thereof, and also notice, etc.

Then follow the common counts, in usual form.

Asa Dow and Joseph L. Hurd filed their separate pleas, as follows :

The said Asa Dow denies that he, together with the said Arrick, Anderson, Hurd and Stewart, undertook and promised in form and manner as the said plaintiffs had complained, etc.

And for a further plea, the said defendant, Dow, by leave, etc., prays judgment of the said writ and declaration, because the said several supposed promises and undertakings in said declaration mentioned, were not by the said Dow, as copartner or otherwise with the said defendants, Arrick, Anderson, Hurd and Stewart, or any or either of them, under the name, firm and style of Arrick & Anderson, nor by the said defendant with any other person or persons under the name, style and firm of Arrick &

Anderson, or in any other way or manner; he also denies that he was, at the time, a copartner with his co-defendants, or any other persons under the name, style and firm of Arrick & Anderson; but avers, on the contrary, that the said supposed promises were made by the said Alfred A. Arrick and George W. Anderson alone, and not as copartners with this defendant and his other co-defendants. The usual affidavit of merits was also filed by said Dow.

The said defendant, Joseph L. Hurd, filed his said separate plea, the same as the said Dow, verified in the usual manner, and the usual affidavit of merits.

Issue was joined on these pleas.

A default of said defendants, Arrick & Anderson, impleaded, etc., was entered, and a reference was taken to the court to assess damages.

By agreement of parties, the issues joined between plaintiffs and defendants, Dow and Hurd, were submitted to the court without the intervention of a jury.

The court found the issues joined for plaintiffs, and assessed damages against all the defendants, except Duncan Stewart, not served, at the sum of $896, and thereupon said defendants, Dow and Hurd, submitted their motion for a new trial, which was overruled.

Dow and Hurd prayed an appeal, which was allowed.

The plaintiffs, to prove the issues on their part, produced a witness who testified:

I am book-keeper for the firm of Dow, Hurd & Co.; the members of the firm are Asa Dow, Joseph L. Dow, and J. L. Hurd & Co., of Detroit; said company consists of Duncan Stewart, Ellwood Burks, and J. L. Hurd; know the handwriting of the firm.

Seven letters were here introduced in evidence, which were admitted to be in their handwriting, which letters are as follows:

*Chicago, Saturday, August* 21*st*, 1858.

We sold the last car load of barley to-day, and it brings a fine profit.

D., H. & CO.

P. S.—Mr. Hurd just in, and says you have not got the corn off yet, and that you have 10,000 bus. there. Do not send any more there till you get it off.

Let everything come in by rail. We shall yet make a bad thing out of the La Salle mine.

There is no mistake, at the present prices, we are running a great risk in not getting purchases forward, and we prefer not touching another bu. till it does come forward.           In haste,                DOW, H. & CO.

GENTS:—Yours of yesterday received. The boat from La Salle got in last night, and we let it go to-day at 64c. afloat, at which it closes dull. We have not

Dow et al., impl., etc., *v.* Phillips et al.

heard whether the balance was shipped by rail or not. Market still looks down, and everything dull. As stated yesterday, we think it best to stop buying entirely at the south till we get what is already bought forward, and see how we stand.

We have advised your Mr. Arrick to this effect.

Resp'y yours,           DOW, HURD & CO.

GENTS:—Yours of yesterday received. We send the list of cars to Mr. Arrick, at Decatur, to-night. The market closes dull at inside quotations.

We sold, last night, 400 bus. of No. 1 red wheat, at 1.08 in store, and will put it into the joint account, unless you prefer to hold longer. If so, please let us know.        Resp'y yours,          DOW, HURD & CO.

*Chicago, Dec'r 14th,* 1858.

MESSRS. ARRICK & ANDERSON — GENTLEMEN:—Yours of yesterday is received. We did not expect your draft to-day, for the reason that we had several other parties to supply, besides having about 800 hogs on hand, which we are carrying along a few days, hoping the market may rally a little, 5.00 and 6.00 being the best we can do, dividing on 200.

Mr. Hurd says you mentioned having received on advance ac. some $700 within the past few weeks, and yet you do not lessen your balance any. This is certainly not as it should be. We have a right to expect you to draw down the balance at least to the extent that you receive on advances. Besides, we feel if we continue the business on joint ac., that you should secure us to the extent talked of when your Mr. Arrick was here, if no more, and you certainly cannot think us unreasonable to ask it.

Let us hear from you without delay on this subject. Do not buy any more hogs at over $4\frac{1}{2}$ to 5.00. Car No. 76 in, and sold at 50c. for 70 lbs.

Resp'y yours,           DOW, HURD & CO.

*Chicago, Thursday, Dec.* 16, 1858.

GENTS:—Yours of yesterday received; also dispatch of to-day. We paid your draft to-day. We wrote you day before yesterday giving the reason why it was not paid when first presented. We are delivering the hogs as fast as possible, but having so many we shall not get round to your lot till to-morrow. The eastern news comes in a little better to-night, and possibly prices may stiffen up here a little, and you had better take your share at four-and-a-half to four-and-three-quarters for light, and five to five-and-a-quarter for heavy. We should have held on another day, but the R. R. folks were getting so full that they could not keep them.

Corn and wheat unchanged.

Yours truly,           DOW, HURD & CO.

*Chicago, Thursday, Dec.* 23, '58.

GENTS:—Inclosed we send you account sales of hogs and corn. The cold weather makes corn active and at full prices. You had better take your share at market rates, and same for corn and wheat.

Yours truly,           DOW, HURD & CO.

*Chicago, Dec.* 28, '58.

MESSRS. ARRICK & ANDERSON — GENTS:—Yours of yesterday is received. Two more of your drafts were presented to-day, but for reasons mentioned yesterday, we could not considerately honor them. Nor do we think that you can reasonably feel that we have done very wrong in not doing so, considering all the circumstances, of which you of course, as well as ourselves, are fully advised.

Dow et al., impl., etc., *v.* Phillips et al.

However, we are willing, bad as matters are, to go on and do the best we can to wipe the loss out, if you feel disposed to make up security to the amount of four thousand dollars, and will give you a reasonable time to do it, and until you decide either pro or con, we will furnish to Mr. Thompson what funds may be necessary to carry along the business, and we have written him to draw on us for whatever may be needed for that purpose.

Inclosed we send you a statement of the joint account from the beginning; also account sales of two hogs. Owing to the soft weather and a lower market, we shall hold over the lot of twenty-nine for a few days, for colder weather and better prices.                    Resp'y yours,                    DOW, HURD & CO.

The statements of accounts are all in my handwriting, and were sent to Arrick & Anderson, as book-keeper for Dow, Hurd & Co., or else he gave them to Mr. Dow for that purpose; several bills, like the two shown me (the bills sued upon), were presented to Dow, Hurd & Co., and all but one paid; I know that many bills have been presented, an average of one a week since 25th May, 1858, up to December 25th; many of them were made payable to the order of George M. Price, (same as shown me.)

Statements of account were then introduced by plaintiffs, headed, "Mendota, in Joint Account with Dow, Hurd & Co., Dr." This account contains sundry items of charges, amounting to about $80,000, principally for grain, but includes charges for telegraph, clerks' salary, express items, some freight, inspection and insurance, extending from May 3rd, 1858, to December 25th, of the same year.

Also account, "Contra, Cr." Which amounts to about $6,000 less than the previous account. This account consists chiefly of items of credits for net proceeds of sales of grain, extending from May 25th, 1858, to December 25th, 1858.

Statement marked No. "2," is headed, "Sales by Dow, Hurd & Co., in Joint Account with Arrick & Anderson," showing items of each sale, the amount of each sale, price received, and expenses; which shows a profit to Cr. of joint account, of $1,814.79.

I know that Hutton was employed as clerk by Arrick & Anderson, in the grain business; item of —— was in grain; we sent some books to Arrick & Anderson, and paid the express charges; telegraphs were sent to Mendota, or some other place, where they were interested on joint account; item of expenses of $387, is an amount given by A. & A. for joint matter.

Two telegraph dispatches and one receipt were here introduced as evidence. The following are copies of the same:

*Mendota, Dec.* 17, 1858.

By Telegraph from Chicago, Dec. 17, 1858.

To Arrick & Anderson:—Draw for enough to pay for what you buy.

                              ⸴ DOW, HURD & CO.

Dow et al., impl., etc., *v.* Phillips et al.

By Telegraph from Chicago, Dec. 25th, '58.

To Arrick & Anderson:—Please send Warren three hundred (300,) and draw on us.

DOW, HURD & CO.

Merry Christmas.

(Copy Receipt.)

*Arlington, Ills., Decr.* 27, '57.

$300.—Received of Arrick & Anderson, per Griffiths, three hundred dollars, on acc't of Dow, Hurd & Co.　　　D. C. WARREN.

Drafts, copies of which are attached to declaration, were read in evidence, being admitted to be genuine.

SMITH & DEWEY, for Appellants.

VAN BURENS & GARY, for Appellees.

BREESE, J. From the evidence in the bill of exceptions, it cannot be questioned that there was a grain partnership between Arrick and Anderson, at Mendota, and Dow, Hurd & Co., at Chicago, the firm name of which at Mendota was Arrick & Anderson. It is also very apparent, from the evidence, that the money to carry on this partnership came through these bankers, the defendants in error. In commercial partnerships like this, where the profit and loss was to be shared equally, the law implies authority in the several partners to bind the whole by executing notes, bills of exchange, etc., in the partnership name, if executed for the usual business of the partnership, and within the scope and usage of similar partnerships. *Gray* v. *Ward*, 18 Ill. R. 32.

The evidence shows also, that the course of dealing between these parties was of long continuance, and, in many instances, in the same manner as the bills in question, were drawn and discounted, and it is not now fit and proper that Dow, Hurd & Co. should object that they are not responsible.

We think, also, that the telegraph dispatches from Dow, Hurd & Co., to their copartners, Arrick & Anderson, and which were shown to these bankers before the bills were discounted, amounts to such an express authority to draw the bills, as to forbid the parties from denying it.

The judgment is affirmed.

*Judgment affirmed.*